IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01806-SKC-NRN

SAMUEL CUNNINGHAM,

Plaintiff,

v.

TRAVELERS HOME AND MARINE INSURANCE COMPANY,

Defendant.

## ORDER ON DISCOVERY DISPUTE DENYING PLAINTIFF'S REQUEST FOR INSURER'S POST-LITIGATION CLAIM EVALUATION MATERIAL

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute. Consistent with the Court's Practice Standards, the parties submitted a Joint Discovery Dispute Report with exhibits on April 21, 2025. *See* ECF Nos. 47-1 through 47-8. On April 23, 2025, the Court held a discovery hearing on the issues raised. ECF No. 47. A transcript of the discovery hearing can be found at ECF No. 53. The dispute is about whether Plaintiff Samuel Cunningham (insured) should be entitled to Defendant Travelers Home and Marine Insurance Company's ("Travelers") (insurer) post-litigation claim evaluation file, including a privilege log of communications between counsel and the adjuster assigned to the claim after the lawsuit was filed.

I.   **Background**

This is a breach of contract and statutory and common law bad faith suit, arising from an automobile accident. A not insubstantial portion of this Court's docket consists

of cases just like this—with an insured automobile driver suing their own insurance company. Plaintiff is suing Travelers, his insurer, based on the underinsured motorist ("UIM") coverage contained in his auto insurance policy. Plaintiff was rear-ended by a driver who was following too closely and not paying attention. Plaintiff claims to have suffered permanent injuries, including a traumatic brain injury which has caused cognitive and physical impairments and deficits affecting his ability to work (both in the past and in the future). Plaintiff settled his claim against the tortfeasor for $100,000. At the time of the crash, Plaintiff was insured for $250,000 in UIM coverage by Travelers. Plaintiff sought benefits from Travelers under the UIM coverage. Plaintiff alleges he cooperated with Travelers in providing documentation and responding to Travelers' requests for information in a reasonable and timely manner, such that Travelers had a reasonable opportunity to settle the UIM claim. Plaintiff in this suit alleges that Travelers has breached the insurance contract. He also brings claims for common law bad faith and statutory unreasonable delay or denial.

For its part, Travelers says that Plaintiff's medical bills were covered by the $100,000 payment from the tortfeasor. Travelers also disputes the causation, existence, severity, reasonableness, amount of damages and injuries that Plaintiff claims.

This discovery dispute relates to Plaintiff's request for Travelers' "full claims file," including *post-litigation* claims evaluations. There is no dispute that Plaintiff is entitled to the claim file (including all claim notes before the lawsuit was filed). In connection with his request, Plaintiff demands that Travelers produce a privilege log covering post-litigation attorney-client privileged materials or conduct. Plaintiff argues that because he brings not just a statutory undue delay or denial claim under Colo. Rev. Stat. § 10-3-

115, but also a common-law bad faith claim, he should be entitled to post-litigation materials to confirm that Travelers is fulfilling its ongoing duty to act in good faith towards its insured throughout the course of the relationship, even after litigation has been filed.

## II.  Analysis

This discovery dispute highlights a tension between two competing principles in Colorado insurance law. The first principle is the so-called "suspension rule." That rule states that "an insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012); *see also Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593–94 (Colo. App. 1988) (obligation to negotiate as a reflection of good faith is suspended when insured demands arbitration); *Johnston v. Standard Fire Ins. Co.*, No. 20-cv-02106-CMA-MEH, 2022 WL 1225311, at *4 (D. Colo. Apr. 25, 2022) (where lawsuit had been filed, and there was disagreement regarding damages at the time suit was filed, insurer's duty to negotiate, settle, or pay claim is suspended). Of course, if there is no genuine disagreement, then the insurer's duty to pay an undisputed claim continues unabated even if litigation has been filed concerning claims about which there is genuine disagreement. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 989–992 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018).

The second—and arguably conflicting—principle is that an insurer has a continuing duty to act in good faith towards its insured, and that duty continues even

after litigation is filed. *See Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) ("This duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith."); *see also Lynn v. State Farm Mut. Auto. Ins. Co.*, 748 F. Supp. 3d 1030, 1034 (D. Colo. 2024) (noting the insurer's continuing duty of good faith and fair dealing, even through litigation, and the countervailing principle that litigation suspends some "but not all" of the insurer's duties to its insured).

The conflict between these principles becomes apparent in the post-litigation discovery context, as we find in this case. Plaintiffs suing their insurance company sometimes seek post-litigation claim notes to try to assess whether the insurer is fulfilling the asserted continuing good faith obligations to the insured. But insurers question the relevance of any post-litigation claim notes. If the duty to negotiate, settle, or pay is suspended, the argument goes, then post-litigation claim notes are irrelevant because whether the insurer continued to evaluate the claim post-litigation is immaterial—the value of the claim will be decided by the fact-finder at trial and, once litigation is filed, the insurer has no obligation or duty to incorporate the new information into a new or better settlement offer. Post-litigation, the information being collected by the insurance company (and by the plaintiff) is being used to prepare for presentation to the jury, who will be the ultimate arbiter of the amount of damage, causation, or other disputed issues.

Judge Arguello reached this conclusion when she sustained an objection to a magistrate judge's order in *Johnston*, finding that because the duty to negotiate a settlement is suspended during litigation, there is no basis to find that "the post-litigation claim notes and evaluations are relevant." 2022 WL 1225311, at *4. Judge Arguello also pointed out the impracticality of requiring production of post-litigation claim notes:

> [F]rom a practical standpoint, requiring production of post-litigation claim notes would necessarily result in inconsistent discovery obligations between parties. Once an insured files suit, insurers are required to defend against claims of breach of contract and bad faith, and they are subject to the discovery rules and deadlines set by courts. If insurers are required to continue to evaluate claims post-litigation and provide information to plaintiffs, plaintiffs could simply circumvent discovery rules and deadlines by submitting new information and demanding an insurer's post-litigation analysis. This is not what the law requires. To hold otherwise would incentivize plaintiffs to rush to the courthouse to file a lawsuit and then continue to submit records to insurers in an attempt to avoid the discovery process.

*Id.* Judge Arguello further explained that once litigation is filed, "every decision made by the insurer [post-litigation] is logically done in the context of the pending lawsuit." *Id*. at *5. Typically, once a suit is filed (and especially when there are extra-contractual claims), the file is turned over to a new adjustor who communicates with defense counsel on a regular basis. Thus, not only did Judge Arguello find in *Johnston* that the post-suit claim notes were irrelevant, they also "would necessarily be protected by the work product doctrine or attorney-client privilege." *Id*. at *6. *See also Morrisey v. Allstate Ins. Co.*, No. 08-cv-02174-LTB-MJW, 2009 WL 2400963, at *2 (D. Colo. Aug. 5, 2009) (rejecting plaintiff's effort to discover work done by post-litigation insurance adjuster who did not begin working on case until after lawsuit was filed, because "[i]t is clear that any work performed by [the adjuster] would be protected by either the work product doctrine or attorney-client privilege").

In contrast to Judge Arguello's *Johnston* decision are two recent opinions by two of my magistrate judge colleagues. In *Lynn*, Judge Dominguez Braswell, while recognizing the "confusion regarding the production of post-litigation claim review materials," respectfully disagreed with *Johnston*, finding that "[p]ost-litigation claim activity is still relevant to the separate and unabated duty of good faith and fair dealing." 748 F. Supp. 3d at 1032, 1034. Judge Dominguez Braswell noted that the defendant insurer admitted that it continued to receive, in the course of litigation, additional information about the plaintiff's claimed injuries and employment, and continued to review the information post-suit. She concluded that the plaintiff in *Lynn* was "entitled to know whether that review has been conducted in good faith and whether Defendant is adhering to its duty of good faith and fair dealing." *Id*. at 1035. Ultimately, Judge Dominguez Braswell in *Lynn* held that "[i]nsureds are entitled to know whether their insurers continue to operate in good faith, and post-litigation claim review materials are relevant to that determination." *Id*. Therefore, the conclusion in *Lynn* was that the plaintiff was entitled to the production of non-privileged post-suit claim review materials and the insurer was required to produce a privilege log of post-suit claim review materials that were being withheld on privilege grounds. *Id*.

More recently, in *Diedrich v. Owners Insurance Co.*, No. 23-cv-03026-CNS-KAS, 2025 WL 264066 (D. Colo. Jan. 21, 2025), Judge Starnella addressed a protective order sought by the defendant insurer, also in a UIM breach of contract and statutory/common law bad faith case. The insurer sought to preclude the plaintiff from asking questions about Rule 30(b)(6) deposition topics implicating the post-litigation claim file and post-litigation handling of the plaintiff's UIM claims. As in *Lynn*, Judge

Starnella noted that "a question exists as to whether that continued duty of good faith and fair dealing renders evidence regarding post-litigation claim handling relevant." *Id.* at *3. Judge Starnella concluded that the plaintiff was entitled to know whether the insurer was adhering to the duty of good faith and fair dealing, even after the filing of the lawsuit. This meant the plaintiff would be entitled to discovery of the insurer's post-litigation claim handling—including handling of information received from the plaintiff during the litigation. "That discovery will shed light on whether [d]efendant delayed or denied payment of UIM benefits without a reasonable basis and whether [d]efendant knowingly or recklessly disregarded the validity of [p]laintiff's claim." *Id.* at *5. Judge Starnella found that the adversarial nature of a UIM first party lawsuit does not suspend the Defendant insurer's "duty to investigate." *Id*. at *6. Post-litigation discovery was necessary, because "[i]f discovery is not permitted, [p]laintiff will never know if [d]efendant continued to investigate and adjust his claim in good faith and whether it delayed or denied UIM benefits without a reasonable basis or knowingly or recklessly disregarded the validity of [p]laintiff's claim." *Id*.

*Diedrich* cited another decision, *Bise v. American Family Insurance Co.*, No. 22-cv-03270-REB-KAS, 2024 WL 3023549 (D. Colo. May 7, 2024), in which Judge Blackburn overruled an objection to a discovery order in yet another UIM automobile bad faith lawsuit. In *Bise*, at issue was whether the insurer had undervalued the insured's claim, including impairment damages and future economic damages. The insurer objected to a magistrate judge's ruling that the insurer's adjustor or Rule 30(b)(6) witness be required to testify about the post-litigation claim handling, which the magistrate judge had ruled was "relevant and discoverable." *Id.* at *2. The insurer

7

further objected to its witnesses having to be deposed on post-lawsuit claim handling.

*Id*. Judge Blackburn found that post-suit claim handling evidence was relevant regardless of the claims being asserted:

> Assuming the claim of Mr. Bise in this case is fairly debatable, American Family's duty to negotiate the claim is suspended until that debate is resolved in this litigation. That suspension, however, does not mean evidence of American Family's post-litigation handling of the claim of Mr. Bise is irrelevant to his claims of breach of insurance contract, unreasonable delay or denial of benefits, and common law bad faith. Rather, evidence of American Family's post-litigation claim handling arguably is relevant to all three of these claims. That evidence is relevant to a determination of whether American Family's position in the debate is correct or incorrect. Evidence of American Family's post-litigation claim handling has a tendency to make consequential facts related to all three claims "more or less probable" than they "would be without the evidence." Fed. R. Evid. 401(a). Of course, relevant evidence is discoverable.

*Id.* at *5. Judge Blackburn also rejected the notion that making post-suit claim handling discoverable would improperly disrupt the discovery process, finding that an insurer could appropriately limit any unfair advantage to the plaintiff by resorting to the "rules of civil procedure and the Scheduling Order." *Id*. The "more serious problem" in Judge Blackburn's view was "prohibiting a plaintiff from discovering relevant information in discovery." *Id.* Ultimately, Judge Balckburn found the decision allowing discovery of post-suit claim adjustment information "neither clearly erroneous nor contrary to law." *Id.*

With the utmost respect to my three colleagues, my own opinion here is different, and is more along the lines of Judge Arguello's decision in *Johnston*. Post-suit claim evaluation information is not relevant to whether there was a reasonable debate about the value of the claim *at the time the suit was filed*. *See Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996) ("An insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of

8

that decision."), *aff'd and remanded*, 955 P.2d 1008 (Colo. 1998). If there is fair debate about damages, causation, or coverage at the time the suit was filed, then the duty to negotiate and settle is suspended. The proof that there was a debatable question as to the insured's entitlement to payment must be determined using pre-suit evidence. After suit has been filed, an insured cannot send more information (for example, more medical records, expert reports, or employment information) and insist that the new information be evaluated and payment be made because now, *in light of the new, post-suit, information*, entitlement to payment is no longer debatable. To do so would reduce the suspension rule to a nullity. If the duty to negotiate, settle, and pay has been suspended by the filing of the lawsuit, then the provision of new information *during the lawsuit* supporting the insured's position cannot un-suspend (or restart) that duty.

Having brought a lawsuit alleging bad faith conduct by the insurer, a plaintiff should not be permitted to send to the insurer new information about damages or injuries post-litigation, and use the insurer's alleged deficient evaluation of that new information (necessarily done in the context of the lawsuit and with the advice of counsel) to further bolster the bad faith claims.

Thus, I find that it is not correct to conclude that a plaintiff in a common law bad faith action is necessarily entitled to discovery of an insurer's post-litigation claim file and associated conduct. It depends on the lawsuit and the circumstances. In light of the abatement of the duty to negotiate a settlement on the filing of a lawsuit, "an insurer's conduct after the commencement of adversarial proceedings can be admissible and relevant to an insurer's duty of good faith *only when the proponent of such evidence makes a sufficient showing of relevance*." *Meadows v. Elec. Ins. Co.*, No. 15-cv-2524-

9

MBH, 2016 WL 7868824, at *8 (D. Colo. June 30, 2016) (emphasis added) (citing *Rabin v. Fidelity Nat'l Property & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1116 (D. Colo. 2012). To understand when post-litigation conduct would be admissible at trial (and therefore be subject to discovery), it is important to look at the context of the cases that speak to the insurer's continuing post-litigation duty of good faith, so as to grasp which duties are suspended and which duties continue (and can be breached), and therefore can be admissible evidence of the insurer's continuing bad faith conduct.

One example is *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545 (Colo. 1997), where an insured and her children were injured in an automobile accident. The insurer refused to pay bills totaling over $8,000 because it had concluded that the insured had reached "maximum medical improvement." The unpaid providers refused to provide further services and the insured plaintiff could not secure medical treatment for a period of more than twelve months until after she had prevailed in a mandatory arbitration proceeding. After losing in the arbitration, the insurer sent a payment via check payable to the insured, her attorney, and seven health care providers (a nine-party check), which the insured was unable to timely cash. Because of the delay in getting payment in another form, the insured was able to resume her medical treatment only after a fourteen-month hiatus, and her prognosis worsened in the interim. The insured presented an affidavit from an insurance expert stating that the insurance company's post-arbitration conduct—after benefits had been awarded--constituted harassment and further delayed the insured's right to recovery. The Colorado Supreme Court concluded that although the arbitrators has specifically declined to find the insurer's pre-arbitration conduct to be willful and wanton, such a finding did not preclude

a finding that the insurer had breached the duty of good faith with its conduct *after* the arbitration proceeding, reasoning that "claims of insurance bad faith may encompass all of the dealings between the parties, including conduct occurring after the arbitration procedure." *Id.* at 552. The Court held that the insured had "made a showing of alleged additional misconduct which occurred after the arbitration award was rendered," which was admissible at trial to show a breach of the continuing duty of good faith. *Id.*

Another example of post-litigation conduct being admissible to show breach of an insurer's continuing duty of good faith is *Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo. App. 1990). In *Southerland*, the plaintiff was injured on the job, and was deemed to be entitled to workman's compensation benefits. The defendant insurer commenced bi-weekly total disability payments from the date of injury forward. For various personal reasons, the plaintiff (while still totally disabled and experiencing severe and chronic pain), moved to Texas to get help from her family. Because of the move, the defendant insurer petitioned the Workmen's Compensation Division to terminate benefits, arguing that the plaintiff's leaving the state constituted a voluntary withdrawal from vocational rehabilitation. The ALJ rejected defendant's contentions. The insurer then engaged a private investigator to monitor the plaintiff's activities. After these events, and because of defendant's chronic late payments, underpayment of wage benefits, refusal to provide information requested by the plaintiff so she could properly evaluate the amount of benefits she was entitled to, and failure to institute rehabilitation benefits in a timely manner, the plaintiff sued for breach of the insurer's duty of good faith, winning $60,000 in compensatory damages and $25,000 in punitive damages. One claimed point of error on appeal was the trial court's having allowed into

evidence several instances of bad faith conduct after the filing of the complaint—late payments of bi-weekly benefits and conduct pertaining to the rehabilitation process in Texas. *Id.* at 1106. The Colorado Court of Appeals found no error in allowing this evidence, finding "the continued late payments and ongoing difficulties in securing rehabilitation were merely a continuation of the same difficulties that preceded the filing of the complaint and were relevant as evidence of defendant's habitual pattern in dealing with plaintiff." *Id*. Thus, in *Southerland*, as in *Dale*, the plaintiff's entitlement to benefits had already been established—and it was the insurers' post-litigation continuing bad faith conduct in paying (or not paying) those benefits that was relevant to the bad faith claim. Neither *Dale* nor *Southerland* involved an insurer being forced to disclose post-litigation evaluations of a claim for benefits that had never been established in the first place.

In *Rabin*, the insurer argued that because its duty to negotiate was suspended, all evidence of its conduct occurring after the plaintiff filed suit would be inadmissible to support claims for statutory and common law bad faith. 863 F. Supp. 2d at 1114. *Rabin* also involved alleged delays or deductions from an appraisal award. The appraisal award had been issued after the plaintiff had filed suit, and the insurer had made certain deductions from the award before issuing payment. Because the appraisal award had come down after suit was filed, the insurer asserted that its refusal to pay the entire award should be inadmissible. Judge Babcock in his *Rabin* decision determined otherwise, relying primarily on the *Southerland* decision, finding that the refusal to pay and the deductions from the appraisal award were "merely a continuation of the same difficulties that preceded the filing of the complaint," and the conduct was relevant as

12

evidence of the insurer's "habitual pattern of dealing with" the insured. *Id*. at 1115–16. Judge Babcock explicitly did not decide whether the post-litigation conduct would be admissible if it had been the "sole basis for a bad faith section 1116 claim." *Id.* at 1116.

From these cases, where courts have specifically identified and discussed the nature of the continuing post-litigation duty of good faith and the kind of post-litigation evidence that could potentially be admissible in a bad faith case, the Court concludes that a post-litigation failure to evaluate new information, or a failure to make a settlement offer post-litigation, is not the kind of evidence that is relevant or admissible, precisely because of the insurer's duty to "negotiate, settle, and pay" is suspended once litigation is filed.

Confirming this view is the decision by Judge Wang in *Stanley v. State Farm Mutual Automobile Insurance Co.*, No. 21-cv-00996-NYW-NRN, 2023 WL 2479953 (D. Colo. Mar. 13, 2023). There, in the summary judgment context, Judge Wang recognized that post-suit conduct could be relevant to a bad faith claim where there was unreasonable pre-suit conduct related to or relevant to post-suit conduct. But Judge Wang rejected the assertion that a refusal by the insurer to provide information about evaluations completed during the litigation, or refusal to pay benefits after litigation was filed, could constitute unreasonable conduct or bad faith. *Id.* at *13. Judge Wang accordingly adopted the reasoning of Judge Arguello in *Johnston*, holding that once litigation is filed, the duty to continue to evaluate claims and provide information to the plaintiff is suspended. *Id*.

### III. Conclusion

To return to the discovery context that presently confronts the Court, Plaintiff's position is that he should be entitled to discover the post-litigation claim evaluation file, and that the Court should require Travelers to provide a post-litigation privilege log, all for the purposes of seeing if the alleged pre-litigation conduct (of inadequately evaluating a claim and refusing payment) continued post-litigation. But the duties of the insurer are modified with the filing of a lawsuit. And because the duty to negotiate is suspended when a suit is filed, and all new information that is provided post-suit is evaluated in the litigation context, the claim evaluation post-suit will never be the same as the claim evaluation pre-suit. Post-suit evaluations are not relevant and are not likely to be admissible at trial. Forcing an insurer to prepare a post-suit privilege log would be a wasteful exercise. Therefore, with the utmost respect for Judges Blackburn, Dominguez Braswell, and Starnella, I must join in the general conclusions of Judges Arguello and Wang and find that under the circumstances of this case, this requested evidence is not relevant. To grant Plaintiff's discovery request would suggest that in every insurance bad faith case the plaintiff will always be entitled to post-suit claim file information, which I do not find to be the law. Instead, post-suit conduct, to be admissible (and discoverable) must be of a piece with unreasonable pre-suit conduct (other than claim evaluation) that continued after the filing of the lawsuit. Examples would be conduct, such as in the cases described above, where benefits had already been awarded through arbitration or appraisal, and the insurer continued to withhold or interfered with payment of monies found to be owing. Depending on the case, there may be other unusual circumstances that would merit discovery of post-suit conduct by

an insurer. *See*, *e.g.*, *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 4230630, at *5 (D. Colo. June 28, 2023) (allowing discovery of post suit decision by insurer and its counsel to tender check for portion of claim, where insurer sought to use the tender of check as affirmative evidence of its good faith conduct toward its insured), *aff'd*, 2023 WL 6962084 (D. Colo. Oct. 20, 2023).

It is enough to say that in this case, Plaintiff has failed to make the necessary showing that post-litigation claim evaluation or other post-litigation conduct would be relevant or admissible. Therefore, Plaintiff's request for discovery of this information and for a post-litigation privilege log is **DENIED**.

Dated at Denver, Colorado this 27th day of June, 2025

_____
N. Reid Neureiter
United States Magistrate Judge

15