IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Case No. 1:24-cv-01806-SKC-NRN

SAMUEL CUNNINGHAM,

Plaintiff,

v.

TRAVELERS HOME AND MARINE INSURANCE COMPANY,

Defendant.

---

**ORDER GRANTING AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RETAINED EXPERT AUBREY CORWIN, OR, IN THE ALTERNATIVE, FOR A JURY INSTRUCTION REGARDING HER ATTEMPTED INTERFERENCE WITH PLAINTIFF'S EXPERT WITNESS (DKT. 93)**

---

The above referenced Motion (Dkt. 93) is fully briefed and before the Court. This is an insurance bad faith case arising from a car accident. But the issue currently before the Court is several degrees removed from the claims and defenses in the case. The current issue arises from a defensive polemic Defendant's vocational rehabilitation expert, Aubrey A. Corwin, sent directly to Plaintiff's vocational rehabilitation expert, Reg Gibbs, after Gibbs criticized Corwin's experience or qualifications in his expert report and deposition testimony.[1]

[1] As the Court understands it, both experts were retained as affirmative experts with Gibbs also retained as a rebuttal expert.

The parties' briefing on the Motion is not so helpful. Plaintiff embellishes the facts and circumstances to an unnecessary degree, while Defendant severely downplays the significance of the highly unusual and inappropriate conduct of its expert witness vis-à-vis an opposing expert witness. Plaintiff argues Corwin's rebuke threatens a civil suit for libel and slander against Gibbs "as well as reports to their shared credentialing body based upon his opinions rendered *in this case*." Dkt. 93 p.2 (emphasis in original). Plaintiff further contends Corwin's conduct in sending the invective is akin to witness tampering or an attempt to influence the testimony of, or otherwise intimidate, an opposing expert witness. *Id.* pp.6-7. Plaintiff asks the Court to employ its inherent authority to sanction litigation abuses by striking Corwin, or in the alternative, giving an adverse inference instruction at trial.

Defendant argues the letter only raises Corwin's ethical concerns over Gibbs' attacks on her credentials in this litigation. *See generally* Dkt. 97. Defendant surmises:

> Ms. Corwin's letter only addresses Mr. Gibbs' personal attacks on her. The same does not discuss any of Mr. Gibbs' opinions related to Plaintiff, this case, or any other case. She offers no critique of his opinions or discussion of his methodology or any other matter concerning his analysis of Mr. Cunningham's claims. Ms. Corwin strictly limited her professional grievance with Mr. Gibbs to his personal attacks on her character and qualifications that she has identified as being false.

*Id.* p.4.

In the Court's view, the truth of the matter is somewhere in between the parties' characterizations. The most salient lines from Corwin's misguided missive are these:

- "Upon reviewing the . . . report you issued in the Samuel Cunningham case, I was astounded by your decision to delve into your opinions regarding my qualifications and experience."
- "[Y]our attack of my qualifications and experience is in violation of the CRC Codes of Ethics."
- "Your commentary concerning my qualifications and experience violates enforceable ethical standards, including those prohibiting disparagement, unprofessional criticism, and failure to uphold integrity in professional relationships."
- "Your decision to issue a report questioning my qualifications and experience is the antithesis of professional courtesy."
- "Your report in the Cunningham matter violates these standards in multiple respects."
- "Further, your uninformed attempt to critique my professional background exceeds the scope of your retention in this matter, as was addressed during your deposition on June 23, 2025."
- "And to be clear, this is not the first time you have done this; however, this was the most egregious."
- "The statements contained in your report constitute libel, as they involve false assertions made with the intent to damage my professional reputation. These statements also constitute slander, as you reiterated and affirmed the same false assertions in sworn testimony."
- "Consider this letter formal notice that multiple courses of action are available to me in response to your unprofessional and tactless conduct."

*See generally* Dkt. 97-1.

The evidence is that Corwin acted of her own accord. She neither coordinated with Defendant or defense counsel over the letter, nor informed them of it after the fact.

## LEGAL PRINCIPLES

Federal courts have broad discretion to exercise their inherent powers to sanction a full range of litigation misconduct that abuses the judicial process. *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). These inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation and citation omitted). This discretion includes "the power to exclude or admit expert testimony . . . and to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice an opposing party." *See Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (citations omitted).

## ANALYSIS

Corwin's broadside can reasonably be read to threaten Gibbs with litigation or reporting him to licensing or other governing authorities. After accusing Gibbs of violating "CRC Codes of Ethics" and of libeling and slandering her, she threatens that he should "[c]onsider this letter formal notice that *multiple courses of action are available to me* in response to your unprofessional and tactless conduct." (Emphasis added.) The fact she doesn't mention a lawsuit doesn't nullify a threat of litigation

when reading the letter as a whole. And while she takes issue with Gibbs' attacks on her credentials—attacks she takes personally—his commentary emanates from his expert report(s) and the opinions he offers in this case. In other words, the letter is not completely detached from Gibbs' opinions in this case despite any long-standing beef between these experts.

It is not unusual in litigation for a rebuttal expert to offer an opinion on the relevance of the opposing expert's qualifications or experience. *See, e.g.*, Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise[.]"); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 1649773, at *1 (D. Kan. June 9, 2009) ("[A] portion of the defense expert reports attack the qualifications of plaintiff's experts, which is primarily relevant to the Court's pre-trial determination under *Daubert* and may not ultimately be admissible at trial."); *Bachmann v. Hartford Fire Ins. Co.*, 323 F. Supp. 3d 1356, 1360 (M.D. Fla. 2018) ("[T]he parties' remaining reliability and relevance disputes must be decided by the jury—preferably based on the litigants': [ ] presentation of contrary evidence, such as testimony from the litigant's own expert witness providing both contrary opinions and criticism of . . . the opposing expert's qualifications and the inaccuracy or unreliability of his or her opinions[.]"). Which makes Corwin's conduct all the more peculiar and concerning. But because Corwin acted alone, the Court is hard pressed

to exercise its inherent power with a sanction that penalizes Defendant for the conduct of a retained expert who went rogue.

A testifying witness's credibility is always at issue. Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."); *see also EEOC v. Flasher*, 986 F.2d 1312, 1317 (10th Cir. 1992) ("In the final analysis, the [trier of fact] is required to . . . assess the credibility of witnesses[.]"); *United States v. Mike*, 655 F.3d 167, 180 (3d Cir. 2011) ("[C]redibility is always an issue whenever any witness testifies."). Corwin has been qualified as an expert witness in vocational rehabilitation, loss of earning capacity or life care planning, in at least 15 different state and federal courts. Dkt. 87-2 p.3. And she has testified in deposition or trial in at least 86 cases. Dkt. 87-2 pp.5-13. The fact that she, as an experienced retained expert witness, would react in this fashion to an opposing expert based on opinions he expressed in his report(s) or deposition in the middle of litigation, impugns her credibility.

A jury may consider evidence of a witness's prior conduct when that conduct has a logical tendency to bear on the witness's credibility—such as by demonstrating a concrete reason to doubt the accuracy or truthfulness of the testimony. *See United States v. Abel*, 469 U.S. 45, 52 (1984). One method of impeaching a witness' credibility is by showing the witness has a bias. *See United States v. Baldridge*, 559 F.3d 1126, 1135 (2009) ("It is permissible impeachment to expose a witness's bias."). Bias is "the relationship between a witness and a party which might cause the witness to slant

his testimony for or against the party." *Id.* (citing *Abel*, 469 U.S. at 52). "Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' *self-interest*. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* (emphasis added); *see also United States v. Thompson*, 359 F.3d 470, 476 (7th Cir. 2004) ("We cannot agree that there is a general requirement that the threat of a party must be related specifically to a witness' courtroom testimony before such evidence and the suggestion of resulting bias can be introduced on cross-examination."). "A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *Abel*, 469 U.S. at 51. The rules of evidence allow "wide latitude for the jury to assess possible witness bias." *Baldridge*, 559 F.3d at 1136.

Here, the lengths to which Corwin went—in the middle of litigation—to safeguard her reputation provides a basis for the jury to infer a self-interested motive in avoiding blame and portraying events in a manner favorable to herself, and consequently, to consider that motive in assessing the credibility of her testimony. Striking her as a witness or instructing the jury on an adverse inference would unfairly penalize Defendant, who was unaware of her unorthodox actions. The Court will instead allow Plaintiff to use Corwin's letter during her cross-examination at

trial to impeach her credibility. The parameters of that use will need to be discussed before her testimony.

* * *

For the reasons shared above, Plaintiff's Motion to Strike Defendant's Retained Expert Aubrey Corwin, Or, In the Alternative, For A Jury Instruction Regarding Her Attempted Interference with Plaintiff's Expert Witness (Dkt. 93) is GRANTED IN PART and DENIED IN PART. It is GRANTED insofar as Plaintiff sought the Court's exercise of its inherent authority to sanction Corwin's litigation misconduct and DENIED insofar as the specific sanctions Plaintiff sought.

DATED: September 17, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge